UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD VINCENT ROOD, | No. 2:12-cv-01476 AC P |
| Petitioner, | |
| v. | ORDER and |
| GARY SWARTHOUT, | FINDINGS AND RECOMMENDATIONS |
| Respondent. | |

Petitioner is a California state prisoner proceeding pro se with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the first amended petition filed on March 30, 2015, ECF No. 45, which presents four claims challenging petitioner's 2010 conviction and sentence for first degree residential burglary. Respondent filed a first amended answer, ECF No. 63, and petitioner filed a traverse, ECF No. 65.

BACKGROUND

Preliminary Proceedings

Petitioner was originally charged with two counts of first degree residential burglary in violation of California Penal Code section 459 in two separate criminal complaints filed in Shasta County on September 15, 2009 (case number 09-06719) and October 9, 2009 (case number 09-

////

////

1

07628). 1 CT 1, 5.[1] The September 15, 2009 complaint charged petitioner with burglarizing the residence of Sadie and Ladel Redinger ("Redinger residence") on September 12, 2009. 1 CT 1. The October 9, 2009 complaint charged petitioner with burglarizing the residence of John and Julie Fotopoulos and David and Emily Phelps ("Fotopoulos residence") on September 9, 2009. 1 CT 5. Both complaints alleged that petitioner had two prior convictions for serious felonies that qualified as "strikes" under California law, and that he served a prior prison term under which a sentence enhancement could be imposed pursuant to California Penal Code Section 667.5(b).

On November 4, 2009, the prosecution moved to consolidate the two cases for trial. 1 CT 16–20. On November 30, 2009, petitioner's counsel opposed the motion orally in court; and later filed a written opposition on December 3, 2009. 1 CT 22–29. On December 7, 2009, the trial court denied the motion to consolidate without prejudice.[2] 1 CT 30. The prosecution renewed its motion to consolidate on May 3, 2010, which the trial court granted on May 20, 2010. 1 CT 55–60, 96–98.

On May 20, 2010, the prosecution filed a consolidated information charging petitioner with two counts of first degree residential burglary in violation of California Penal Code section 459. 1 CT 81–83. Count one charged petitioner with the burglary of the Fotopoulos residence on September 9, 2009 and count two charged petitioner with the burglary of the Redinger residence on September 12, 2009. 1 CT 81–82. The consolidated information also alleged petitioner's two prior convictions for serious felonies that qualified as "strikes," and his prior prison term under which a sentence enhancement could be imposed. Id. Petitioner's two prior strikes were both for first degree burglary, the first occurring in 1992 and the second in 1997. Id. Prior to trial, both parties stipulated that the prior conviction and prison term allegations would be bifurcated from the jury trial on the charged crimes. 1 CT 79.

////

////

---

[1] "CT" refers to the Clerk's Transcript on Appeal, Volume One ("1 CT") and Volume Two ("2 CT").

[2] At the time, Judge James Ruggiero presided over the preliminary proceedings.

2

Trial

Trial commenced on May 18, 2010. The prosecution presented the following evidence regarding the Redinger burglary. On September 12, 2009 at approximately 10:00 a.m., 15-year old Sadie Redinger ("Sadie") was watching television in her living room when she heard a knock on the front door, followed by a series of banging noises. She looked out the window and saw an unfamiliar truck and someone she did not know. As Sadie was going to the front door to lock it the doorknob started to jiggle. She then ran to the office where she shut and locked the door. Sadie heard someone come after her and it sounded like someone ran into the house and ran around inside. Sadie heard the person take off back down the hallway. At that point, Sadie called her mother, Ladel Redinger ("Ladel"), and told her there is someone in the house. While waiting for her mother to come home, Sadie hid behind a black filing cabinet in the office and heard footsteps in the house.

Once Ladel arrived home, Sadie came out of the office and saw Ladel standing in the kitchen door screaming at a man in her backyard. Both Sadie and Ladel noticed the sliding back door to the house was open and testified that it is never open because the family has two cats and two dogs that are not supposed to be together. Ladel told the man that she called the police and he responded that he was not waiting around and got into his truck and left. Ladel got in her car and pursued the man in her vehicle but was unable to successfully chase him.

A couple of hours later, Ladel and Sadie were eating in their kitchen and saw the same truck drive by their house. Ladel again got in her vehicle and pursued the truck. Ladel was able to contact the police and provide a partial license plate and description of the truck before the driver of the vehicle got away again.

Police apprehended petitioner, and Sadie and Ladel were taken to a location to identify a possible suspect. The detective who escorted Sadie and Ladel read the following directions to them:

> You will be asked to look at one or more individuals. The fact that the individuals are being shown to you should not influence your judgment. You should not conclude or guess that the field show up contains the person who committed the crime. You are not obligated to identify anyone. It is just as important to free innocent persons from suspicion as to identify guilty parties. Please do not

> discuss the field show up with any other witnesses nor indicate in any way that you have identified anybody.

RT 180.[3]

      Sadie identified petitioner as the man she saw at her front door; and both Sadie and Ladel identified petitioner as the man they saw in their backyard.

      During the trial, Sadie identified petitioner in court as the man she saw in her house on September 12, 2009. She also identified petitioner's truck as the truck she saw in front of her house on September 12, 2009. Sadie testified that during the in-field lineup she was not influenced in any manner by the fact that petitioner may or may not have been in custody, she identified petitioner from her own independent recollection as being the person that was in her house, and there was nothing that was said or done that influenced her identification of petitioner. Similarly, Ladel identified petitioner during trial as the man she saw in her back yard. She was asked if there was any doubt in her mind that petitioner was the person that was in her house on September 12, 2009 and she testified, "There is no doubt at all." RT 178.

      The prosecution presented the following evidence regarding the Fotopoulos burglary. On the morning of September 9, 2009, John Fotopoulos ("John") observed a silver truck on his street while walking his dogs with his wife, Julie Fotopoulos ("Julie"). Approximately twelve to fifteen minutes later he saw the silver truck again pulling into his nephew's driveway, which was near his house. The driver of the truck told John that he was lost and drove away. John identified petitioner as the person driving the truck. After seeing the truck drive off, Julie received a phone call about someone begin in their house. David Phelps ("David"), John's stepson, testified that he was home at the time John and Julie left to walk the dogs. David testified that he was sleeping and woke to his dog barking. When he opened his bedroom door he saw the blur of a person running by and saw a person moving near his front door. When the intruder saw David, he said that he had the wrong house and left. David went to the front porch and saw the person get into a truck. David went back into the house and woke his sister who called John and Julie. David identified petitioner as the intruder during the trial.

---

[3] "RT" refers to Reporter's Transcript on Appeal, Volume One.

4

On June 1, 2010, the jury found petitioner guilty of first degree burglary at the Redinger residence (count two). RT 312–313. However, the jury could not reach a verdict on count one involving the Fotopoulos residence, and the court declared a mistrial as to that count. RT 308–312. One June 3, 2010, the district attorney agreed to dismiss count one after petitioner agreed it could be considered at his sentencing hearing.[4] RT 319–322. On July 20, 2010, petitioner filed an "Invitation for Court to Dismiss Prior Convictions Under the Three Strikes Law Pursuant to Penal Code Section 1385," also known as a Romero motion,[5] which the court subsequently denied. 2 CT 437–441; RT 325–349.

On August 27, 2010, the court sentenced petitioner to 25 years to life due to his two prior strikes. RT 349. It then imposed two five-year enhancements for each prior serious felony conviction and a one-year enhancement for the prior prison term, resulting in a total sentence of 36 years to life in state prison. Id.

Post-Conviction Proceedings

On November 15, 2010, petitioner filed a timely appeal with the California Court of Appeal, Third Appellate District. Lodged Doc. 1. On appeal, petitioner argued that (1) the trial court erroneously imposed a one-year enhancement for a prison term, and (2) the trial court abused its discretion when it denied petitioner's motion to dismiss at least one of his prior "strikes" under California law. Id. On March 29, 2011, the California Court of Appeal affirmed the judgment of conviction and the sentence on petitioner's prior two "strike" convictions, but found that the prior prison term enhancement imposed pursuant to California Penal Code Section 667.5(b) should be stricken, reducing petitioner's sentence from 36 years to life to 35 years to life. Lodged Doc. 4. On April 11, 2011, petitioner appealed to the California Supreme Court on the question of the trial court's alleged abuse of discretion in failing to dismiss at least one of his prior strikes. Lodged Doc. 5. On June 8, 2011, the California Supreme Court summarily denied review. Lodged Doc. 6.

---

[4] See People v. Harvey, 25 Cal. 3d 754 (1979).
[5] See People v. Superior Court (Romero), 13 Cal. 4th 497 (1996), as modified on denial of reh'g (Aug. 21, 1996).

5

On May 31, 2012, petitioner filed a petition for writ of habeas corpus in the California Supreme Court.[6] Lodged Doc. 8.[7] Petitioner alleged ineffective assistance of both his trial and appellate counsel. Id. at 3. On August 8, 2012, the California Supreme Court denied the petition with citations to People v. Duvall, 9 Cal. 4th 464, 474 (1995) and In re Swain, 34 Cal. 2d 300, 304 (1949).[8] Lodged Doc. 7.

On May 14, 2014, petitioner filed a habeas corpus petition in the Shasta County Superior Court, alleging that (1) his federal due process rights to a fair trial were violated because the trial judge did not disclose that her husband was employed as a detective with the same agency that arrested petitioner, (2) the trial court abused its discretion in "sentencing petitioner to life" under California's "three strikes law" and counted a "non-valid strike" conviction as a prior strike, and (3) trial counsel provided ineffective assistance by failing to argue the 1992 conviction was not a strikable offense and by failing to "explore immutable physical impairments which could have vendicated [sic] petitioner." Lodged Doc. 9. On June 13, 2014, the Shasta County Superior Court denied this petition in a three-page order. Lodged Doc. 10.

On August 8, 2014, petitioner filed a habeas corpus petition with the California Court of Appeal raising the same claims of a violation of due process based on the trial judge's alleged conflict of interest, the trial court's abuse of discretion and use of a "non-valid strike" conviction, and ineffective assistance of trial counsel. Lodged Doc. 11. Petitioner added a fourth claim of ineffective assistance of appellate counsel. Id. On August 14, 2014, the California Court of Appel summarily denied this third petition. Lodged Doc. 12.

////

---

[6] This is the same date petitioner filed his first section 2254 petition in federal court, as discussed below.

[7] Lodged Documents 7 and 8 are incorrectly labeled. Lodged Document 7 is the "Order from the California Supreme Court Denying the Habeas Petition," and Lodged Document 8 is "Petitioner's Petition for Writ of Habeas Corpus Filed in California Supreme Court."

[8] The citations to Duvall and In re Swain refer to the procedural requirements of habeas corpus petitions in California, namely: the defendant's burden to establish the grounds for release by fully stating a claim with particularity and providing documentary supporting evidence, Duvall, 9 Cal. 4th at 474; and the defendant's responsibility to "fully disclose his reasons for delaying in the presentation of [the facts upon which he would have a final judgment overturned]," In re Swain, 34 Cal. 2d at 304.

On October 29, 2014, petitioner filed another habeas corpus petition in the California Supreme Court. Petitioner re-alleged his claims of judicial bias and violation of due process due to the judge's alleged conflict of interest, ineffective assistance of trial and appellate counsel, and added a claim based on an alleged improperly suggestive "in-field" lineup in violation of his Fifth and Sixth Amendment rights. Lodged Doc. 13. On January 14, 2015, the California Supreme Court denied this final state petition with citation to In re Clark, 5 Cal. 4th 750, 767–69 (1993).[9] Lodged Doc. 14.

On May 31, 2012, by operation of the prison mailbox rule, petitioner filed a petition for habeas corpus in this court.[10] ECF No. 1. On October 18, 2012, respondent answered. ECF No. 15. On April 24, 2013, in his traverse, petitioner requested a stay under Rhines v. Weber, 544 U.S. 269 (2005) to exhaust his claim of judicial bias and pursue post-conviction remedies in state court under Proposition 36. ECF No. 24. On March 30, 2015, after the court granted the stay (ECF No. 29), petitioner filed his First Amended Petition. ECF No. 45. On August 21, 2015, respondent filed a first amended answer, ECF No. 63, and on September 17, 2015, petitioner filed his traverse, ECF. No. 65.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[9] In In re Clark, the court noted that "absent a change in the applicable law or the facts, the court will not consider repeated applications for habeas corpus presenting claims previously rejected," nor will the court consider "newly presented grounds for relief which were known to the petitioner at the time of a prior collateral attack on the judgment." 5 Cal. 4th at 767–68.
[10] See Houston v. Lack, 487 U.S. 266 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

7

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 99 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether . . . the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407–08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520–21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to

"the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 101.

## DISCUSSION

### I. Claim One: The Trial Court Abused its Discretion in Denying Petitioner's Motion to Dismiss One or Both of His Prior Strikes

#### A. Petitioner's Allegations

Petitioner contends that the trial court abused its discretion when it did not dismiss one or both of his prior strikes and sentenced him to "a draconian 36 year to life sentence for a non-violent property crime."[11] ECF No. 45 at 11. Petitioner claims he is "outside the spirit of the strikes law" because the instant conviction did not involve violence or property damage, his prior strikes were "remote in time" (specifically in 1992 and 1997), he has no history of violent crime convictions, and, other than the convictions in 1992 and 1997, his criminal record "consists of all minor offences [sic]." Id. Petitioner claims that the sentence of 36 years to life "does not serve the purpose of why the strikes law was created." Id. at 11–12.

Before sentencing, petitioner filed a Romero motion requesting that the trial court dismiss petitioner's two prior "strike" convictions under California Penal Code section 1385. 2 CT 437–42. In his Romero motion, petitioner advanced the same arguments he now asserts before this court, as well as claims that a sentence under the three strikes law would constitute cruel and unusual punishment and that petitioner committed the offense due to a drug addiction and wanted to enter a residential rehabilitation program. 2 CT 440. In ruling on the motion, the trial court considered both parties' arguments, petitioner's supporting documents and testimony, as well as

---

[11] As noted in the discussion on post-conviction proceedings, supra, the California Court of Appeal vacated a one-year prior prison term enhancement, reducing petitioner's sentence to 35 years to life.

9

the probation recommendation sentencing report. RT 325–49. The court found that petitioner did not "fall outside the spirit of the three strikes law" and denied petitioner's <u>Romero</u> motion to dismiss his prior convictions. RT 349.

### B. <u>The Clearly Established Federal Law</u>

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991) (citing 28 U.S.C. § 2241; <u>Rose v. Hodges</u>, 423 U.S. 19, 21 (1975) (per curiam)). The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005).

### C. <u>The State Court's Ruling</u>

Petitioner raised his abuse of trial court discretion claim on direct appeal. Because the California Supreme Court denied review without comment, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797 (1991); <u>Ortiz v. Yates</u>, 704 F.3d 1026, 1034 (9th Cir. 2012). The California Court of Appeal ruled as follows:

> Defendant's current crime took place in September 2009 when he broke into a house where a 15-year-old girl was home alone. The girl hid in the office and called her mother on the telephone to alert her someone was in the house. Meanwhile, defendant went into the girl's bedroom and took her "MP3 player." Within five minutes of being called, the mother returned home to find defendant in her backyard and confronted him. He fled in his truck. A jury found him guilty of residential burglary, which is a strike.
>
> Defendant had two other strikes and was therefore subject to a minimum sentence of 25 years to life in prison. He argued the trial court should dismiss his prior strikes. The trial court refused, finding defendant did not "fall outside the spirit of the three strikes law." On appeal, defendant contends this was an abuse of discretion because his current offense did not involve violence, weapons, or injuries, his prior strikes were "remote," his prior offenses were "minor," and "'drug use and alcohol use…led [him] to…mak[e] bad choices.'"
>
> There was no abuse because the court's decision was well within the bounds of reason. (<u>People v. Williams</u> (1998) 17 Cal. 4th 148,

10

> 162 [standard of review].) Defendant's criminal conduct began when he was a juvenile, continued into adulthood, and included multiple periods of incarceration, some for major crimes. In 1986, he was found to have committed burglary and petty theft and engaged in lewd or dissolute conduct in a public place, resulting in a juvenile wardship. Five years later, as an adult, he was convicted of battery, petty theft with a prior, trespass, vandalism, and being under the influence of an intoxicating substance while in public. He served time in jail and was placed on probation. One year later, in 1992, he was convicted of petty theft and his first strike, i.e., first degree burglary. He served more time in jail and was continued on probation. In 1993, he violated probation and was sentenced to prison for four years. In 1995, he was convicted of petty theft with a prior and violated his parole, resulting in more jail time. In 1996, he was convicted of being under the influence of an intoxicating substance, violating parole, and violating a Shasta County ordinance prohibiting the taking of salmon from an area closed to salmon fishing. He served more jail and prison time. In 1997, he violated parole again and was convicted of second degree burglary, receiving stolen property, and his second strike, i.e., first degree burglary, resulting in a 13-year prison sentence. In 2008, he was convicted of reckless driving while intoxicated and was found to have violated parole twice. In early 2009, before his current offense, he was found to have violated parole yet again.
>
> On this record, it was reasonable the court gave "little weight" to the remoteness of his prior strikes "in light of [his] continued criminal conduct." Furthermore, contrary to defendant's assertion that his crimes were "minor," as we have recounted they included a prior residential burglary along with the current burglary in which he broke into an inhabited home, conduct which carried with it the possibility that someone could be injured, regardless of whether defendant himself was armed. Finally, rather than being a mitigating factor, defendant's unchecked drug use that played a role in his criminal conduct weighed against dismissing a strike. On this record, there was no abuse.

Lodged Doc. 4 at 2–4 (footnotes omitted).

### D. Objective Reasonableness Under § 2254(d)

As a preliminary matter, the court notes that respondent asserts that this claim is procedurally defaulted, and petitioner agrees. ECF No. 65-1 at 4. The claim is more easily disposed of on the merits, however, and the court therefore elects to bypass the default issue. See Batchelor v. Cupp, 693 F.2d 859, 864 (9th Cir. 1982) (court may exercise discretion to reach merits where doing so would be more efficient than adjudicating the question of procedural default).

////

Petitioner's Romero claim is a question of California law and is not cognizable on federal habeas review. See Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002) ("[Petitioner] argued that he should be resentenced in light of the California Supreme Court's decision in *Romero*, . . . which held that judges have discretion not to count prior qualifying offenses as strikes. The district court correctly concluded that this state law claim is not cognizable on federal habeas review.") (internal citations omitted) (overruled on other grounds, 538 U.S. 901 (2003)). Therefore, even if the trial and appellate courts erred, petitioner cannot obtain federal habeas relief because errors of state law are not reviewable in a § 2254 proceeding. See Estelle, 502 U.S. at 68.

II. Claim Two: Judicial Bias

A. Petitioner's Allegations

Petitioner next contends that the trial judge withheld a conflict of interest arising from her husband's employment as "a major crimes detective with the agency that is largely responsible for the arrest, investigation, and preparation of the prosecution[] of petitioner." ECF No. 45 at 13. Specifically, petitioner alleges that the trial judge's husband works with the Shasta County Sheriff and within the same unit as the lead investigators in the Fotopoulos case, Terissa Clemens and Eric Magrini. Id. at 16.

B. The Clearly Established Federal Law

It is clearly established that due process requires a fair trial in a fair tribunal. In re Murchison, 349 U.S. 133, 136 (1955). It is equally well established that to prevail on a claim of judicial bias a petitioner must plead and prove facts sufficient to "overcome a presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. 35, 47 (1975). There is no constitutional violation without a showing of facts that objectively demonstrate a serious risk of actual bias. See Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 883–84 (2009).

C. The State Court's Ruling

The California Supreme Court denied this claim with citation to In re Clark, 5 Cal. 4th at 767–69. Lodged Doc. 14. Because Clark indicates the petition is procedurally defective, see

supra n.9, this does not constitute a decision on the merits of the claim.

In the only reasoned state court decision, the superior court ruled as follows:

> [P]etitioner argues that his due process rights to a fair trial were violated because the trial judge did not disclose that her husband was employed by the same law enforcement agency that arrested petitioner. However, other than stating that his rights were violated, petitioner fails to describe in what manner he was prejudiced by not knowing this information. Further, judicial canons of ethics require such a disclosure only when the family member is a party or a witness to the proceeding. Since the judge's husband was neither a party nor a witness in petitioner's trial, the judge's failure to disclose that information was not required and did not affect petitioner's ability to receive a fair trial. A petitioner bears a heavy burden initially to plead sufficient grounds for relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)

Lodged Doc. 10 at 3.

### D. Objective Reasonableness Under § 2254(d)

The record is devoid of facts that objectively demonstrate a serious risk of actual judicial bias. See Caperton, 556 U.S. at 883–84. Petitioner has presented no facts indicating that the trial judge's husband was personally involved in the investigation of the Fotopoulos burglary. Even assuming that the trial judge's husband had worked with the law enforcement personnel who were involved in the Fotopoulos case, there are no indications that the trial judge was affected by those relationships in the handling of this case. Nor are there facts suggesting that the judge was biased against petitioner on the basis of extra-judicial considerations, or that petitioner's right to a fair trial was infringed in any way. Because petitioner's judicial bias claim lacks support in the record, it was not unreasonably rejected.

### III. Claim Three: Impermissibly Suggestive Lineup

#### A. Petitioner's Allegations

Petitioner alleges that his Fifth and Sixth Amendment rights were violated during an "unconstitutionally suggestive lineup in which the petitioner was the only person in the lineup[] and was without counsel." ECF No. 45 at 19. More specifically, petitioner claims that if he had been told that he was a burglary suspect, he would have told the officer that he would be willing to speak with him with the presence of counsel and would have remained silent. Id. at 23. Petitioner alleges the lineup was conducted without the presence of counsel, which petitioner

13

claims "caused [him] to suffer undue prejudice and potential bias." Id. at 24 (stating that if counsel had been present, counsel would have asked the "important question" during the lineup whether petitioner had an accent given Ladel stated she believed the suspect "to be 'Mexican'"). Petitioner claims that it is "very plausible" that Ladel and Sadie were aware petitioner was on active parole for burglary. Id. at 25–26. Petitioner alleges that he was the only individual being viewed when the lineup occurred, and that he was removed from a police cruiser in handcuffs and held by two officers to stand next to his truck. Id. at 26) Petitioner concludes that "the lineup was suggestive and without counsel. Misconduct occurred, and there were several facts of evidence that if looked into by counsel prior to the lineup would have proven the suspect not petitioner. Counsel would have declared the lineup illegal, and bias to petitioner." Id. at 27.

### B. The Clearly Established Federal Law

"The Sixth Amendment right . . . does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." McNeil v. Wisconsin, 501 U.S. 171, 175 (1991) (quoting United States v. Gouveia, 467 U.S. 180, 188 (1984)) (internal quotation marks omitted). "[T]he right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." Rothgery v. Gillespie County, 554 U.S. 191, 194 (2008).

A lineup or field show-up also does not implicate the Fifth Amendment privilege against self-incrimination. United States v. Wade, 388 U.S. 218, 221 (1967); Schmerber v. California, 384 U.S. 757, 761, 763–64 (1966). The privilege against self-incrimination "offers no protection against compulsion to submit to fingerprinting, photographing or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." Schmerber, 384 U.S. at 764.

### The State Court's Ruling

There is no reasoned state court opinion concerning petitioner's impermissibly suggestive lineup claim. The California Supreme Court denied this claim with citation to In re Clark, 5 Cal.

14

4th at 767–69. Lodged Doc. 14. Respondent argues that the claim is procedurally defaulted because the limitations period expired more than two years before petitioner raised this claim.

The court exercises its discretion to bypass the procedural default question.[12] Because the state supreme court rejected the claim on procedural grounds, there is no merits adjudication entitled to AEDPA deference and district court reviews constitutional issue de novo. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002), cert. denied, 539 U.S. 916 (2003). Where a claim fails under the pre-AEDPA de novo standard of review, it would also fail under AEDPA's heightened standard of deference to state court judgments. Berghuis v. Thompkins, 560 U.S. 370, 389 (2010).

C. Merits of Claim Three and Objective Reasonableness Under § 2254(d)

Petitioner's claim that the Sixth Amendment was violated by the in-field lineup is misguided. Petitioner did not have a right to counsel at the time of the lineup, because the lineup preceded initiation of criminal proceedings against petitioner. (See Lodged Doc. 13 at 5 (petitioner stating that he was not arrested until after the lineup).) Because no formal charges had been made, petitioner's Sixth Amendment rights were not violated.

Similarly, the Supreme Court has specifically held that a lineup is not testimonial in nature, and therefore does not violate the Fifth Amendment:

> We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have.

Wade, 388 U.S. at 222. It necessarily follows that there can be no violation of Miranda v. Arizona, 384 U.S. 436 (1966), as Miranda is based on the Fifth Amendment privilege against

---

[12] District courts retain the discretion to determine a petition on its merits, bypassing an asserted procedural bar, where the underlying claims are "clearly not meritorious." See Lambrix v. Singletary, 520 U.S. 518, 525 (1997); see also Day v. McDonough, 547 U.S. 198, 208–09 (2006) (district courts can exercise discretion in each case to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition); Granberry v. Greer, 481 U.S. 129, 135 (1987) (discussing ability of district court to bypass exhaustion determination where the petitioner does not raise a colorable federal claim).

compulsory incrimination. Accordingly, this claim fails under either de novo or AEDPA reasonableness review.

### IV. Claim Four: Ineffective Assistance of Counsel

#### A. Petitioner's Allegations

Petitioner claims counsel failed to conduct a prompt investigation and obtain favorable evidence, namely video footage of petitioner being on camera at three separate business establishments on September 12, 2009 (the date of the Redinger residence burglary) and medical information regarding petitioner's 2008 knee injury, which would have supported that he was not capable of running or climbing at the time of the burglaries. ECF 45 at 28–29. Petitioner also claims that counsel failed to argue before the court that the cases were joined in error. Id. at 29.

#### B. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693–94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

#### C. The State Court's Ruling

Regarding petitioner's claim that counsel should have looked into his medical history to discover a knee injury, the California Supreme Court denied relief with citation to In re Clark, 5 Cal. 4th at 767–69. Lodged Doc. 14. In the only reasoned state court decision on the merits, the superior court ruled as follows:

> Petitioner also claims his attorney should have looked into petitioner's medical history to discover[] a knee injury which would have assisted petitioner in being found not guilty. Petitioner claims that his 2008 knee injury would have prevented him from being about to ". . . run and scale a chain link fence."

16

> The issue of ineffective assistance of counsel was directly addressed by the California Supreme Court for the purposes of Habeas Corpus in *People v. Karis* (1988 46 Cal.3d 612, at p. 657. The court stated a petitioner must show counsel's performance "fell below an objective standard of reasonableness . . . under prevailing professional norms." Then the petitioner is required to demonstrate a "reasonable probability exists that a more favorable outcome would have been reached absent the deficient performance." (*In re Codero* (1988/) 46 Cal.3d 161 at p. 180.) Even if petitioner's counsel would have presented evidence of a knee injury, it is hard to imagine how petitioner would have fared better. Petitioner was identified by three separate individuals as being inside two houses. Petitioner was also found driving a vehicle that was identified by all three people as being used by the burglar to leave the crime scenes. Unfortunately, petitioner has not presented evidence that had his knee injury been presented to a jury, he would have experienced a more favorable outcome. Therefore, his claim is without merit.

Lodged Doc. 10 at 2–3.

There is no reasoned state court opinion concerning petitioner's remaining ineffective assistance of counsel claims: that counsel should have located camera footage and argued that the two cases should not have been consolidated. The California Supreme Court denied these claims with citation to In re Clark, 5 Cal. 4th at 767–69. Lodged Doc. 14. Respondent argues that the claim is procedurally defaulted because the limitations period expired more than two years before petitioner raised this claim.

The court exercises its discretion to bypass the procedural default issues related to Claim Four.[13] Because the state supreme court rejected the claim on procedural grounds, there is no merits adjudication entitled to AEDPA deference and district court reviews constitutional issue de novo. Pirtle, 313 F.3d at 1167. Where a claim fails under the pre-AEDPA de novo standard of review, it would also fail under AEDPA's heightened standard of deference to state court judgments. Berghuis, 560 U.S. at 389.

////

---

[13] District courts retain the discretion to determine a petition on its merits, bypassing an asserted procedural bar, where the underlying claims are "clearly not meritorious." See Lambrix, 520 U.S. at 525; see also Day, 547 U.S. at 208–09 (district courts can exercise discretion in each case to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition); Granberry, 481 U.S. at 135 (discussing ability of district court to bypass exhaustion determination where the petitioner does not raise a colorable federal claim).

17

### D. Merits and Objective Reasonableness Under § 2254(d)

Regarding petitioner's claim that counsel should have investigated his medical history, the state court did not unreasonably deny relief. Without a showing of the evidence that counsel could have developed and presented to achieve a different result, the claim fails as a matter of law. See Strickland, 466 U.S. at 697 (if it is easiest to dispose of an ineffectiveness claim on the ground of lack of prejudice, that course should be followed). Plaintiff made no such showing. Accordingly, he cannot prevail. Hendricks v. Calderon, 70 F.3d 1032, 1042 (1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [petitioner] cannot meet the prejudice prong of the Strickland test."). Because petitioner's allegations do not establish a prima facie claim under Strickland, the state court's denial of relief was both reasonable and correct.

The same analysis applies to petitioner's remaining claims of ineffective assistance of counsel. First, petitioner's counsel did argue the cases should be consolidated. RT 40–75. Petitioner's argument that counsel should have done just what he did defeats any claim that counsel was ineffective. Second, regarding the video footage, petitioner again made no showing beyond his own speculation that investigation into any of these issues would have turned up beneficial evidence that would have affected the outcome of the proceeding. In other words, petitioner fails to establish any reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 693–94.

### CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights.

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court shall randomly assign a district judge to this action.

IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 25, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE